J. M. S., by his Guardian ad litem, Daphne Webb,
Plaintiff-Respondent,

v.

Robert BENSON, Defendant-Appellant-Petitioner.

Supreme Court

*No. 78–246. Argued September 3, 1980.—
Decided September 30, 1980.*

(Also reported in 297 N.W.2d 18.)

For the appellant-petitioner there were briefs by *Bruce
A. Pagel* and *Haukom & Ritchie* of Madison, and oral
argument by *Bruce A. Pagel.*

For the respondent there was a brief by *Daphne Webb*
and *Jacobs, Webb & Weiden* of Madison, and oral argu-
ment by *Daphne Webb.*

COFFEY, J.   Robert Benson   (defendant-petitioner)
appeals from a decision of the court of appeals[1] holding
that an illegitimate child, J.M.S. (plaintiff-respondent)
can maintain an action for a declaratory judgment to es-
tablish his paternity.

---

[1] The decision of the court of appeals is reported at 91 Wis.2d
526, 283 N.W.2d 465 (Ct. App. 1979).

The plaintiff and his mother as next friend[2] privately commenced this action, *i.e.*, without the participation of the district attorney, by the filing of a summons and complaint with the Dane county clerk of court on January 24, 1977.[3] The complaint alleged that Benson is the father of the plaintiff born on March 14, 1965 (more than 11 years prior to the commencement of the action), that Benson and the plaintiff's mother are not and never have been married to each other and that the plaintiff's mother is not "capable" of his support.[4]

In the complaint the plaintiff asks the court for a judgment declaring Benson to be the father and awarding past support in the amount of $20,000 with future support and attorney's fees.

The defendant moved to dismiss this claim on the grounds that it fails to state a claim upon which relief

---

[2] Daphne Webb, upon a petition by the plaintiff and the mother as next friend, was subsequently appointed as guardian *ad litem* by court order dated October 11, 1977.

[3] An original summons and complaint were personally served on the defendant sometime in late October, 1976. However, the plaintiff never filed these documents with the clerk of court and they are not part of the record on appeal.

Benson was served with copies of the amended summons and complaint on March 7, 1977, but these copies were not properly authenticated as required by secs. 801.02(1) and 801.09(4), Stats. Namely, the filing stamp did not indicate the case number. One of Benson's claims in the courts below was that this absence rendered the service defective. However, the issue is not before this court as Benson does not contest that portion of the appellate court's decision holding, "failure of the stamp to show the case number on the copies [of the summons and complaint] served is inconsequential." *J.M.S. v. Benson, supra,* n. 1 at 531.

[4] The complaint also alleged as a second and third claim that Benson has violated sec. 52.05(1), Stats., the criminal nonsupport statute, and that Benson is subject to the court's jurisdiction under secs. 52.21 to 52.45, the paternity statutes. The circuit court granted the defendant's motion to dismiss these claims and the plaintiff has not appealed from that order.

may be granted. In particular, Benson argued that under the common law in Wisconsin a father owes no duty of support to an illegitimate child. Further, he contended that sec. 806.04, Stats., the declaratory judgment statute "is only remedial and does not establish or change substantive rights," *i.e.*, those of an illegitimate child for support from a putative father, and that the action was barred because the statute of limitations for paternity actions in sec. 893.195 had run.

On November 2, 1977, the trial court conducted a hearing on the issue of Benson's statute of limitations defense. At the hearing it was established that in the spring of 1967, some 2 years after the plaintiff's birth, the plaintiff's mother contacted the Dane county district attorney and attempted to initiate paternity proceedings against Benson. The district attorney refused to commence the statutory action as he perceived it to be frought with substantial legal problems. Primarily, he noted that the plaintiff was conceived when the mother was still legally married and thus the district attorney at trial would have to overcome the legal presumption that the mother's husband at the time of conception was the father. *See:* secs. 891.39, 52.35 and 52.355, Stats. Therefore, the district attorney would not only have to prove that the presumptive father was not the male parent but also establish Benson was the father. The district attorney also recalled that there was an issue of the legality of the mother's out-of-state divorce and that this would create problems by bringing collateral matters into the paternity prosecution.

In the spring of 1967 the plaintiff's mother was informed of the district attorney's decision not to prosecute and she made no further attempt to persuade the district attorney to commence a paternity action.

The trial court denied Benson's motion to dismiss and he appealed. The appellate court affirmed the trial

court's denial of Benson's motion to dismiss and Benson now petitions this court for review of the appellate court's decision.

*Issue*

May an illegitimate child by his or her next friend or guardian *ad litem* commence and maintain a paternity action to establish his parent by a declaratory judgment action, thus independent of the paternity statutes, secs. 52.21 through 52.45, Stats.?

The petitioner argues that paternity actions are purely statutory proceedings and cannot be commenced or maintained without conforming to the paternity statutes, secs. 52.21 through 52.45, Stats. These provisions permit the mother to initiate paternity proceedings by complaint to the district attorney. Sec. 52.25. In cases where a woman does not make a complaint, the district attorney may issue a complaint on his own motion if he determines that a "child born out of wedlock" is or is likely to become a public charge. Sec. 52.24.

The statutes provide that a ch. 52 paternity proceeding must be commenced within five years of the date of the birth of the child. Sec. 893.195, Stats.

The court of appeals correctly noted that the paternity statutes make no provision for a child to independently establish his or her paternity:

"It is only if the mother is dead, becomes insane, cannot be found within the jurisdiction or fails to prosecute that the child is substituted as a complainant, as provided in sec 52.35, and the case is then prosecuted [by the district attorney]."

Both the trial and appellate courts acknowledged that strict adherence to ch. 52 for the commencement and maintenance of paternity proceedings would require dismissal of plaintiff's action as it was neither commenced

by the district attorney[5] nor brought within 5 years of the plaintiff's birth. *State ex rel. Smith v. Chicks,* 70 Wis.2d 833, 235 N.W.2d 694, 239 N.W.2d 9 (1975); sec. 893.195, Stats.

The trial and the appellate court, relying on *Slawek v. Stroh,* 62 Wis.2d 295, 304, 215 N.W.2d 9 (1974), held that an illegitimate child's right to determine his natural father is analogous to the constitutional right of a natural father to establish parentage. Thus, the trial and the appellate courts agreed with his contention that he was entitled to a legal forum, namely, a declaratory judgment action to litigate his claim. Therefore, the court must look to both the underpinnings of *Slawek* and the nature of the paternity statutes to resolve the present controversy. We turn first to the paternity statutes.

It is well established that paternity proceedings in Wisconsin are purely statutory in origin. *State ex rel. Lyons v. De Valk,* 47 Wis.2d 200, 203, 177 N.W.2d 106 (1970); *State ex rel. Sowle v. Brittich,* 7 Wis.2d 353, 356, 358, 96 N.W.2d 337 (1959); *State ex rel. Wall v. Sovinski,* 234 Wis. 336, 341, 291 N.W. 344 (1940); *State ex rel. Lang v. Civil Court,* 228 Wis. 411, 414, 280 N.W. 347 (1938); *Goyke v. State,* 136 Wis. 557, 559, 117 N.W. 1027, 117 N.W. 1126 (1908); *Baker v. State,* 56 Wis. 568, 573, 14 N.W. 718 (1883). Accordingly, they must be commenced by the district attorney in the manner prescribed by the legislature. *State ex rel. Chicks v. Smith, supra;* sec. 52.25, Stats. Moreover, where statutes provide a specific right to establish paternity, and the procedures to enforce the paternity judgment, the course prescribed in the statutes must, in the absence of constitutional defect, be considered exclusive. As early as 1893 this court recognized the exclusivity doctrine as pertaining to paternity statutes when creating a new

---

[5] Issuance of the complaint is discretionary with the district attorney.

right combined with a specific remedy. *Pierstoff v. Jorges,* 86 Wis. 128, 138, 56 N.W. 735 (1893). Likewise, in worker's compensation cases where the legislature has seen fit to prescribe statutory classifications and requirements for eligibility for death benefits, this court relied on the exclusivity doctrine and held such enactments are the sole means of qualifying for compensation in the following language:

" '. . . Where the pathway to recovery has been narrowed by legislation, it is the legislature which alone can broaden that pathway.' " [citation omitted]. *Larson v. ILHR Department,* 76 Wis.2d 595, 621, 252 N.W.2d 33 (1977).

Again, in *In re Estate of Blumreich,* 84 Wis.2d 545, 555, 267 N.W.2d 870 (1978), this court reaffirmed the exclusivity doctrine holding that the criteria prescribed in sec. 852.05(1), Stats., for establishing paternity and the right to inherit from the putative father are exclusive.

The plaintiff is asking this court to create a legal hybrid which would allow illegitimate children to bring and maintain paternity actions independent of their mother or the district attorney, notwithstanding the fact that the legislature has spoken on the question of paternity and has set forth a detailed set of procedures in ch. 52, Stats. As already noted, the legislative enactments applicable as of this date do not allow for an independent commencement or maintenance of a paternity proceeding by an illegitimate child.[6] We can understand the plaintiff's attempt to seek a declaratory judgment as a ch. 52 proceeding would have been subject to the bar of the statutes of limitations in sec. 893.195.

---

[6] The legislature has undertaken a revision of the paternity statutes and effective July 1, 1981, illegitimate children may sue for paternity in their own name. Ch. 352, §25, Laws of 1979 creating sec. 767.45, Stats.

We also recognize that the essence of the plaintiff's claim is that it is unfair to exclude the illegitimate child from being allowed to bring the claim, but we disagree with this contention, for not only is the illegitimate child concerned with the question of paternity, but so is the public, the mother and the father. *Francken v. State,* 190 Wis. 424, 209 N.W. 766 (1926).

In this case, the district attorney, exercising the discretion granted by the legislature, declined to commence a paternity action initiated by the mother pursuant to sec. 52.25, Stats. This court has frequently held that the district attorney is clothed with broad discretion in determining whether to proceed with a prosecution. *See: City of Janesville v. Wiskia,* 97 Wis.2d 473, 293 N.W.2d 522 (1980), and cases cited therein. The district attorney's refusal to commence the action was made only after a thorough investigation which revealed that serious problems would arise at trial, not the least of which was the mother's being married to another man other than the defendant at the critical time of conception. Consequently, under the law, her husband, the other man, was the presumptive father. *See:* secs. 891.39, 52.35 and 52.355, Stats. The record clearly demonstrates that the district attorney's action in refusing to prosecute was not an abuse of discretion.

However, the issue before the court is whether we should adopt the plaintiff's declaratory judgment contention and thereby emasculate the procedures which the legislature has enacted to govern the conduct of paternity proceedings including those procedural protections afforded the father in ch. 52 (*i.e.,* blood tests, preliminary examination of the mother, burden of proof, jury trial, district attorney participation in the drawing of settlement agreements).[7] Specifically, the plaintiff

---

[7] The appellate court noted that it was uncertain whether all of the protections afforded a putative father under ch. 52 would

asks this court to judicially create a hybrid legal theory that would circumvent sec. 52.25, Stats., which vests control of paternity proceedings in the district attorney, the public's representative in such proceedings. *State ex rel. Smith v. Chicks, supra; Francken v. State, supra.*

This court has stated:

"Ch. 166 of the statutes [the paternity statutes] not only define a procedure, but by it is created substantive law, *declaratory of the public policy of the state on the subject of [paternity]*." (Emphasis supplied.) *Francken v. State, supra* at 435.

The legislature has set out the public policy of this state on the subject of paternity in ch. 52. It has provided a detailed set of procedures designed to balance the interests of all concerned, the child, the public, mother and father. The legislature has entrusted the commencement of paternity actions to the district attorney and in light of the fact that paternity actions are of statutory origin, we do not deem it advisable to provide otherwise.

Therefore, in view of the foregoing discussion, we hold that the paternity statutes set forth the exclusive method by which a paternity action may be prosecuted and thus the plaintiff has no cause of action as he has not complied with the procedures set forth therein. If the paternity statutes are to be amended, it is up to the legislature to effect a change. In this regard, we are cognizant that the legislature in its 1979 session enacted Wis. Laws, ch. 352 adding secs. 767.45–767.53 to ch. 767,

be available in a declaratory judgment action to establish paternity, but stated, as does the plaintiff, that the court in such a proceeding could order blood tests under sec. 885.23, Stats., and discovery under ch. 804. *J.M.S. v. Benson, supra* n. 1 at 535. However, the court was uncertain as to the burden of proof a child must meet in this type of proceeding and neither party discussed whether the other procedures set out in ch. 52 would or could be made to apply in a declaratory judgment action.

Stats., effective July 1, 1981, allowing a child to sue for paternity in his own name and provides that he or she may commence the action at anytime within 19 years of birth. Secs. 767.45(1) and 893.196, Stats. 1979.

In view of the fact that the plaintiff convinced the appellate and trial courts that this case is analogous to *Slawek v. Stroh, supra,* premised upon *Stanley v. Illinois,* 405 U.S. 645 (1971), we are called upon to either reconcile or distinguish that case.[8] In *Slawek, supra,* we held that an alleged father could institute and maintain a declaratory judgment action to have a court legally determine the parent of a particular minor child. Therefore, in view of the supreme court's ruling in *Stanley v. Illinois, supra,* we recognized that a father has a constitutional right to establish his natural parentage and concluded that it was incumbent upon us to establish a "legal forum with due process procedures to establish these rights." *Slawek v. Stroh, supra* at 304. However, we disagree with the decision of the trial and the appellate courts and hold that *Slawek* is distinguishable as the plaintiff's (child) interest in establishing paternity is or was not blanketly prohibited in this case as it was in *Slawek,* where the father had no means of establishing paternity under a ch. 52 proceeding. As we noted in *In re Estate of Blumreich, supra, Slawek* "was premised on the absence of any other procedure by which the father could establish his rights and duties." In *Slawek* we stated:

"[Secs. 52.21 through 52.45] do not contemplate nor provide for procedures for the commencement of a pa-

---

[8] The plaintiff also cites *Miller v. Currie,* 208 Wis. 199, 242 N.W. 570 (1972), and a number of cases from other jurisdictions as authority for the proposition that the declaratory judgment forum is available to determine paternity during the life of the putative father. *See: e.g., Doughty v. Engler,* 112 Kan. 583, 211 P.2d 619 (1923); *Franklin v. Julian,* 30 Ohio St.2d 228, 283 N.E. 2d 813 (1972); 10 Am. Jur. 2d §86 (1963).

ternity action by a putative father. The action is to be commenced by the complaint of the mother or by the district attorney if he believes the child is or is likely to become a public charge and believes it is in the best interests of the child to do so." *Id.* at 304.

The plaintiff in the case at bar cannot be heard to claim that he has not been accorded a forum in which to have his paternity rights litigated. The legislature, by the enactment of ch. 52, has provided for the virtual representation of his paternity determination through the mother and/or the district attorney. *See:* secs. 52.24 and 52.25, Stats. Thus, since the plaintiff had access to a judicial forum for the determination of his paternity, *Slawek* is distinguishable.

The plaintiff claims that since the common law places a duty on his father to support his legitimate children,[9] this court should create a similar common law duty regarding the rights of illegitimate children and thus should provide a legal forum for the enforcement of this duty. He contends, citing *Gomez v. Perez*, 409 U.S. 535 (1973), that a failure to provide the remedy he desires constitutes a denial of equal protection.

When the plaintiff relies on *Gomez, supra,* he fails to recognize that the laws of the state of Texas did not provide for a forum for the determination of paternity nor for the enforcement of support of an illegitimate child. Whereas, in contrast to Texas, the Wisconsin legislature has created a procedure in ch. 52, Stats., whereby an illegitimate child can determine his paternity and thereafter enforce support against his natural father through his mother or the district attorney. Thus *Gomez* is not in point. Moreover, since we have held that the plaintiff has no cause of action to establish paternity, independent of his mother or the district attorney, and therefore, in the absence of a paternity adjudication, could not enforce

[9] *See: Estate of Peterson*, 66 Wis.2d 535, 225 N.W.2d 644 (1975); *Hoad v. Gilbert*, 205 Wis. 557, 238 N.W. 371 (1931).

the right to support, *see:* sec. 52.21, Stats., we need not reach this issue.

*By the Court.*—The decision of the court of appeals is reversed.