## McFETRIDGE v CHIADO

Docket No. 55581. Submitted December 16, 1981, at Detroit.—Decided May 21, 1982. Leave to appeal applied for.

Janet L. McFetridge brought a paternity action against Michael Chiado more than ten years after the birth of her child. The Wayne Circuit Court, James Montante, J., ruled that plaintiff's action was precluded by the six-year limitation period on paternity actions but that a declaratory judgment action could be maintained on behalf of the child. Defendant appeals by leave granted. *Held:*

1. Paternity proceedings are purely statutory. The statute provides that a paternity action may be brought by the child's mother, the putative father, or the Department of Social Services within six years of the child's birth. An action to determine paternity may not be brought separate from the provisions of the Paternity Act.

2. The six-year limitation period does not violate equal protection guarantees. To the extent that it causes disparate treatment between legitimate and illegitimate children it is substantially related to the permissible governmental interest in discouraging the litigation of stale or fraudulent paternity claims.

Reversed and remanded for entry of accelerated judgment in favor of defendant.

R. I. COOPER, J., dissented. He would hold that, in view of the overriding purpose of the Paternity Act to provide for the support of illegitimate children and the present high degree of accuracy of blood testing, the relationship of the six-year limitation to the state's interest in preventing stale or fraudulent paternity claims is tenuous at best. He would hold that the

REFERENCES FOR POINTS IN HEADNOTES

[1] 10 Am Jur 2d, Bastards § 74.

[2, 3, 6] 10 Am Jur 2d, Bastards §§ 78, 86, 89.
  Statute of limitations in illegitimacy or bastardy proceedings. 59 ALR3d 865.

[3, 6] 16A Am Jur 2d, Constitutional Law § 794.

[4] 16A Am Jur 2d, Constitutional Law §§ 748, 750, 751.

[5] 10 Am Jur 2d, Bastards § 75.

statute creates an unconstitutional classification based on illegitimacy. He would affirm the result reached by the trial court.

OPINION OF THE COURT

1. CHILDREN BORN OUT OF WEDLOCK — PATERNITY.

Paternity proceedings in Michigan are of a purely statutory nature.

2. CHILDREN BORN OUT OF WEDLOCK — PATERNITY.

A paternity action may be commenced by the child's mother, the putative father, or the Department of Social Services within six years of the birth of the child; a child may not maintain a paternity action separate from that allowed under the paternity statute (MCL 722.714; MSA 25.494).

3. CHILDREN BORN OUT OF WEDLOCK — PATERNITY — CONSTITUTIONAL LAW — EQUAL PROTECTION — LIMITATION OF ACTIONS.

The six-year limitation period for bringing a paternity action does not violate equal protection guarantees; to the extent that the limitation period causes disparate treatment between legitimate and illegitimate children in their ability to enforce support obligations, it is substantially related to the permissible governmental interest in discouraging the litigation of stale or fraudulent paternity claims (MCL 722.714[b]; MSA 25.494[b]).

DISSENT BY R. I. COOPER, J.

4. CONSTITUTIONAL LAW — EQUAL PROTECTION — JUDICIAL REVIEW.

*The standard of judicial review of an equal protection challenge to social economic legislation is that a legislative classification must be sustained if the classification is rationally related to a legitimate governmental interest.*

5. CHILDREN BORN OUT OF WEDLOCK — PATERNITY.

*The overriding purpose of the Paternity Act is to provide for the support of illegitimate children.*

6. CHILDREN BORN OUT OF WEDLOCK — CONSTITUTIONAL LAW — PATERNITY — LIMITATION OF ACTIONS.

*The six-year period of limitation for the bringing of a paternity action creates an unconstitutional classification between a legitimate child, on whose behalf an action to enforce support may be brought at any time prior to his 18th birthday, and an illegitimate child, on whose behalf the paternity action must be brought within six years of his birth; this classification is not substantially related to the purpose of the statute which is to*

*provide for the support of illegitimate children (MCL 722.714; MSA 25.494).*

*Merrill, Tatham & Rosati, P.C.,* for plaintiff.

*Archer, Kenney & Wilson (Zemke & Hirschhorn, P.C.,* of counsel), for defendant.

Before: N. J. KAUFMAN, P.J., and BASHARA and R. I. COOPER,* JJ.

PER CURIAM. Plaintiff commenced the present paternity action over ten years after the birth of her child. Defendant moved for accelerated judgment based upon the six-year limitation period contained within the paternity statute. MCL 722.714(b); MSA 25.494(b). Plaintiff countered by arguing that the limitation period violates the Equal Protection Clauses of the United States Constitution, US Const, Am XIV, and the Michigan Constitution, Const 1963, art 1, § 2. The trial court agreed that the statute precluded plaintiff's paternity claim but ruled nonetheless that a declaratory judgment action could be maintained on the child's behalf. Defendant appeals by leave granted.

Initially, we hold that the trial court erred in ruling that the child could maintain a separate declaratory action to determine her paternity. In Michigan, paternity proceedings are of a purely statutory nature. *Pangborn v Smith,* 65 Mich 1, 4; 31 NW 599 (1887). The pertinent statute provides that paternity litigation may be commenced by a child's mother, the putative father, or the Department of Social Services. In addition, a trial court may appoint a guardian ad litem to represent the child's interests. MCL 722.714; MSA 25.494. In any

---

* Circuit judge, sitting on the Court of Appeals by assignment.

event, the action is governed by the statutory six-year limitation. Absent legislative action, a child may not maintain a paternity action separate from that allowed under the paternity statute and subject to the limitation period. *Cf. JMS v Benson,* 98 Wis 2d 406; 297 NW2d 18 (1980).

Secondly, although the dissenting opinion has put forth a well-reasoned analysis of this issue, we do not believe the limitation period of MCL 722.714(b); MSA 25.494(b) operates to violate the Equal Protection Clauses of the United States Constitution, US Const, Am XIV, and the Michigan Constitution, Const 1963, art 1, § 2. To the extent the limitation period causes disparate treatment between legitimate and illegitimate children, it is substantially related to permissible governmental interests. *Lalli v Lalli,* 439 US 259; 99 S Ct 518; 58 L Ed 2d 503 (1978), *Daniel v Collier,* 113 Mich App 74; 317 NW2d 293 (1982). The governmental interest in this case is in discouraging the litigation of stale or fraudulent paternity claims. The limitation period here, which is six years, does not produce an impenetrable barrier effectively shielding otherwise invidious discrimination. Because actions may be commenced by a child's mother, father or the Department of Social Services, the fact that the provision requires initiation of suit during the child's minority does not work an unfairness of constitutional magnitude. *Daniel v Collier, supra.*

Reversed and remanded for entry of accelerated judgment in favor of defendant.

R. I. COOPER, J. *(dissenting).* The court has a responsibility to take into consideration social and technological changes which may occur since a statute was originally promulgated where those changes affect the original purpose of the statute.

In the present case I agree with the majority to the extent that the six-year statute of limitations in paternity matters had a valid legislative purpose to avoid stale claims when promulgated. However, due to the advances in technology through the development of blood tests which can show the probability of parentage to a degree of over 95% certainty, the possibility of prejudice because of a stale claim wanes substantially and becomes insignificant when compared to the need for providing support to illegitimate children who are not presently receiving the same equal protective right to support as that enjoyed by legitimate children.

A legitimate child has the right to support until he becomes 18. An action to enforce this right can be started at any time until the child reaches it 18th birthday. Although an illegitimate child presumptively has the same right to support until it reaches its 18th birthday, the practical effect of the Paternity Act limitation is to restrict the right to a 6-year period. If, in other words, an action is not taken on behalf of the illegitimate child to perfect the right to support within six years of birth, the right to support is lost. Plaintiff validly argues that this disparate treatment between illegitimate and legitimate children clearly violates an illegitimate child's federal and state constitutional right to equal protection of the law.

The case of *O'Brien v Hazelet & Erdal*, 410 Mich 1, 13; 299 NW2d 336 (1980), summarizes the scope of judicial review of equal protection challenges to social economic legislation as follows:

" ' "Under traditional equal protection analysis, a legislative classification must be sustained, if the classification itself is rationally related to a legitimate governmental interest." ' "

The defendant is correct when he states that statutes of limitations should be construed to advance the policies they are designed to promote. The defense provides a respectable list of cases and purposes of such statutes of limitations to the effect that they are intended to prevent stale and fraudulent claims, to require expeditious filing by a complainant and to allow the presentation of witnesses whose memories have not faded or to locate witnesses who may have knowledge of a mother's intimacy with someone other than the purported father who could have sired the child in question. For the above reasons, various states have upheld statutes of limitations pertaining to the initiation of paternity actions. *In re People in Interest of L B,* 179 Colo 11; 498 P2d 1157 (1972), *Thompson v Thompson,* 285 Md 488; 404 A2d 269 (1979), *State ex rel Krupke v Witkowski,* 256 NW2d 216 (Iowa, 1977), *Texas Dep't of Human Resources v Chapman,* 570 SW2d 46 (Tex Civ App, 1978).

However, the overriding purpose of Michigan's Paternity Act is to see that minor illegitimate children are supported and cared for. This conclusion is clearly enunciated by our Michigan Supreme Court as follows:

"Patently, these provisions seek to express society's concern with the support and education of the 'child born out of wedlock.' In terms of need for support and education, we see no difference between children born in or out of wedlock." *Whybra v Gustafson,* 365 Mich 396, 400; 112 NW2d 503 (1961).

This enunciation was reaffirmed and reiterated by our Michigan Court of Appeals as follows:

"The purpose of the Paternity Act is to provide for

the support of an illegitimate child. The announced public policy of this state is to treat children born out of wedlock as no less deserving of support than those born in wedlock." *Smith v Robbins*, 91 Mich App 284, 289; 283 NW2d 725 (1979), citing *Boyles v Brown*, 69 Mich App 480; 245 NW2d 100 (1976).

As stated in *Robbins*, 288:

"An individual is entitled to equal protection under the law. US Const, Am XIV; Const 1963, art 1, § 2. A legislative classification may not be arbitrary. There must be a rational relation between the classification and the purpose of the act in which it is found. *United States Dep't of Agriculture v Moreno*, 413 US 528, 533; 93 S Ct 2821; 37 L Ed 2d 782 (1973), *Fox v Employment Security Comm*, 379 Mich 579, 588; 153 NW2d 644 (1967)."

Various states have found that there was not a substantial relationship between the setting of a statute of limitations and the state's asserted interest of providing support for illegitimate children. In *State Dep't of Health v West*, 378 So 2d 1220, 1227 (Fla, 1979), the Supreme Court stated:

"The arbitrary determination that paternity can only be proved in four years creates an impenetrable barrier to an illegitimate child's right to seek support without considering alternatives which deal directly with the problem of proof. Although proof of paternity may become more difficult with the passage of time, this mere possibility cannot be allowed to work an unconstitutional discrimination against illegitimate children."

Further, the Florida Court observed that the right to support is a continuing one which never becomes dormant. *Id.*

"This duty of future support cannot be barred for

illegitimate children if it is allowed for legitimate children." *Id.,* 1228.

The above conclusion was also reached in *Stringer v Dudoich,* 92 NM 98; 583 P2d 462 (1978), to the effect that if there is no limitation on the right of a legitimate child to seek support then there can be no such limitation on the same right for an illegitimate child. *Id.,* 100. The North Carolina Court of Appeals also applied a substantial relationship standard of review and held that their statute was not substantially related to any permissible state interest but that it discriminated against illegitimate children in violation of the Equal Protection Clause. The North Carolina statute provided a three-year limitation. The North Carolina Court of Appeals reasoned that, because a child is entitled to paternal support throughout its minority, it cannot be said that a claim for such support brought at any time during the child's minority is stale. Further, the court observed that the mere passage of time would not bear a direct relationship to the truth of the claim asserted; thus, the statute was not substantially related to the objective of preventing fraudulent claims. The court found that the child's interest in receiving adequate support manifestly outweighed the relation the statute may have to the prevention of fraudulent claims. Further, the North Carolina court viewed the statutory limitation provision as inconsistent with the state's interest in preventing illegitimate children from becoming public charges. *County of Lenoir ex rel Cogdell v Johnson,* 46 NC App 182; 264 SE2d 816 (1980).

Although Michigan allows the results of blood tests by a defendant to prove that he could not be the father of a child, the state Legislature has not yet amended the statute so as to allow blood tests

to prove that defendant could be the father of the child. Certainly there have been significant advances in the state of technology which, however, have not been adopted by the Legislature to allow such evidence to be used in litigation to prove paternity. Nevertheless the potential of such a change in Michigan law adds support to the position that our statutes' purpose of preventing stale claims may be significantly mitigated by the accuracy of modern blood tests. Further, the present admissibility of exclusionary blood test evidence certainly ameliorates concern of a stale claim. This reasoning found recent support in *Montana Dep't of Revenue v Wilson,* — Mont —; 634 P2d 172 (1981), in which a three-year statute of limitations was held unconstitutional as applied to illegitimate children. The Montana Supreme Court stated:

"Classifications of this nature are invalid under the Fourteenth Amendment, if they are not substantially related to a permissible state interest. * * *

"Recently, we examined the scientific advances in blood testing in determining paternity and the discretionary power of the District Court. *Rose v Dist Court of Eighth Judicial Dist,* 628 P2d 662 (Mont, 1981). The newly-developed, greater percentage of accuracy in determining paternity allows greater protections for the alleged father from fraudulent claims. In light of these advances, the standard of proof required in paternity actions and the discretion granted to the District Court in pretrial hearings, it is concluded that the purpose of section 40-6-108(3), MCA, as applied to the child through a guardian ad litem or other representative, is minimal or nonexistent compared to the interest of the child in obtaining support from his paternal parent. *Id.,* 634 P2d 172, 174.

The above stated cases have all applied a "substantial relationship" standard. This standard has

been upheld in Michigan in *O'Brien v Hazelet & Erdal, supra,* 13. Further, the Supreme Court in *United States v Clark,* 445 US 23; 100 S Ct 895; 63 L Ed 2d 171 (1980), found that classification based on illegitimacy is unconstitutional unless it bears an evident and substantial relation to the particular interest the statute is designed to serve. For the reason set out in the above described cases, it is clear the limitation provision of the Michigan Paternity Act is unconstitutional because a limitation of six years bears at best a tenuous relationship to the state's interest of preventing stale claims whereas the overriding and predominate purpose of the Paternity Act is to see that minor illegitimate children are supported. This right of support exists for the full 18 years of a child's minority and an illegitimate child is clearly disadvantaged by the 6-year limitation as compared to a legitimate child. In applying *O'Brien v Hazelet & Erdal, supra,* it cannot be said such a tenuous relationship would be "rationally related to a legitimate government interest".

In evaluating the question whether Michigan's Paternity Act satisfies constitutional requirements of due process, there must be a showing that the plaintiff has a "property" or "liberty" interest which is protected by the Fourteenth Amendment. Further, pursuant to *Mathews v Eldridge,* 424 US 319, 332; 96 S Ct 893; 47 L Ed 2d 18 (1976), the Court must then determine, if such an interest is found, whether the statutory procedure promulgated was adequate by weighing three factors:

(1) the magnitude of the private interest affected by the official action;

(2) the risk of erroneous deprivation of such interest through the procedure used and probable value of additional safeguards; and

(3) the governmental interest furthered by the procedure used, considering the additional fiscal and administrative burdens that additional or substitute procedures would impose. *Id.,* 424 US 319, 335.

Although there is no Michigan case on point holding that the illegitimate child's right to support is a vested property interest, it may be argued that a child has a valid claim of entitlement from his mother and father and therefore has a property interest at stake. Certainly the father has to be identified in order to pursue such a property interest. The Michigan Paternity Act provides that the mother of an illegitimate child or the Department of Social Services may file a complaint on behalf of the illegitimate child to obtain an order of filiation so that child support may be determined. MCL 722.714(a), (h); MSA 25.494(a), (h). Number one above is satisfied in that there would be a property interest entitling an illegitimate child to receive child support from a putative father. Under number two, there is serious concern whether a child would be deprived of its right of support through the risk of an error. It is certainly foreseeable that a mother of an illegitimate child might have significant resentment toward a putative father and not desire to have any contact at all with him. However, after six years she may find herself in financial difficulties and yet the six-year statute of limitations would prevent the best interest of the child from being fulfilled by barring the mother from being able to seek child support. Further, if the mother then sought aid from the Department of Social Services in the form of ADC payments, the Department of Social Services would only have been alerted to the child's needs at a time after which the six-year statute of limitations had expired. Thus the Department of Social Services also

would be barred from filing a complaint against a putative father on behalf of the illegitimate child. Although the Michigan Paternity Act does provide access to the courts on behalf of an illegitimate child by its mother or by the Department of Social Services, there is nevertheless a serious substantial risk of erroneous deprivation of such a right to child support pursuant to *Mathews v Eldridge.* In the present case it is not clear why the mother or the Department of Social Services did not initiate an action for paternity prior to the expiration of six years.

In conclusion, it is clear that illegitimate children do not receive the same protection as legitimate children; that advances in technology have substantially ameliorated the concern surrounding the original legislative desire to avoid stale claims and thus the original substantial relationship to the purpose of the Paternity Act's statute of limitations no longer exists; and that the risk of error also shows a valid challenge to the sufficiency of an illegitimate child's right to due process under the paternity statute.

I would affirm the result reached by the trial court based on the reasons described above.