SPADA v PAULEY

Docket No. 70902. Submitted December 13, 1984, at Detroit.—Decided February 18, 1986.

Plaintiff, Gregory Spada, a minor, by his next friend Jacqueline Biddle, brought an action against his mother, Janise Pauley, and his alleged father, Gary Lee Pauley, seeking a determination of his parentage, an order directing the correction of his birth certificate, and a determination of the duties and obligations, including support, of his parents. Plaintiff was born in 1970. The defendants were married in 1979 but separated soon after. Following the separation Janise Pauley commenced a paternity action against Gary Pauley which was terminated by accelerated judgment based on the six-year limitation period of the Paternity Act. Gary Pauley then filed a divorce action, in which Janise, in her answer, alleged that Gary Pauley was plaintiff's father. The court in the divorce action refused to consider the issue of paternity. The plaintiff thereafter filed the present action, and the Wayne Circuit Court, Richard D. Dunn, J., granted a motion for accelerated judgment in favor of Gary Pauley. The court held that, although its earlier ruling in the paternity action was not res judicata, plaintiff could not maintain an action to determine his parentage separate from that allowed under the Paternity Act and subject to the act's six-year limitation period. Plaintiff appealed. *Held:*

1. The Paternity Act does not allow a child to commence an action to determine the child's parentage and the parent's obligation of support. The Paternity Act, moreover, is the sole

REFERENCES

Am Jur 2d, Bastards §§ 74 *et seq.*

Am Jur 2d, Constitutional Law § 744.

Right of illegitimate child to maintain action to determine paternity. 19 ALR4th 1082.

Statutes limiting time for commencement of action to establish paternity of illegitimate child as violating child's constitutional rights. 16 ALR4th 926.

Statute of limitations in illegitimacy or bastardy proceedings. 59 ALR3d 685.

Discrimination on basis of illegitimacy as denial of constitutional rights. 38 ALR3d 613.

means by which a paternity and support determination may be obtained on behalf of an illegitimate child. The Paternity Act does not give an illegitimate child a full and adequate legal remedy.

2. Classifications based on legitimacy are invalid as denials of equal protection unless they are substantially related to permissible state interests. Michigan's statutory scheme, which grants legitimate children the right to support from their fathers but does not provide such right to illegitimate children, appears to be a denial of equal protection. Furthermore, there are no legitimate state interests in denying the plaintiff an independent cause of action to determine his parentage and his parents' support obligations.

3. Because the Paternity Act does not afford an illegitimate child a full and adequate legal remedy the equity jurisdiction of the circuit court may be invoked to provide the plaintiff with a forum for his claims. Because such an action is not brought under the Paternity Act, that act's six-year limitation does not apply. The general disability tolling provision of MCL 600.5851(1) is applicable.

Reversed and remanded.

MACKENZIE, J., agreed that the statutory scheme is constitutionally infirm as applied to illegitimate children but dissented from the decision creating a common-law cause of action to determine parentage and the parent's support obligation. She would hold that correction of the infirmity is a matter for the Legislature. She would affirm.

1. CHILDREN BORN OUT OF WEDLOCK — PATERNITY ACT — PARTIES.

A determination of paternity and support, under Michigan's statutory scheme, may be obtained on behalf of an illegitimate minor only through the Paternity Act, and such an action may only be brought by the mother, father, or Department of Social Services, within six years of the child's birth; the statutory scheme denies an illegitimate child a cause of action to determine his parentage and the parent's obligation of support (MCL 722.714; MSA 25.494).

2. CONSTITUTIONAL LAW — EQUAL PROTECTION — ILLEGITIMACY:

Classifications based on illegitimacy are invalid, as denials of equal protection, if they are not substantially related to permissible state interests.

3. CHILDREN BORN OUT OF WEDLOCK — EQUAL PROTECTION.

The state's statutory scheme which grants legitimate children the right to support from their fathers but does not provide such

right to illegitimate children is a denial of equal protection
because there is no legitimate state interest in denying an
independent cause of action to determine parentage and sup-
port obligations in light of the state's compelling interest in
assuring that the primary obligation for support of an illegiti-
mate child falls on the child's parents rather than on the
taxpayers.

4. Children Born Out of Wedlock — Actions — Paternity Act —
     Limitation of Actions.

Because the Paternity Act does not afford an illegitimate child
with a full and adequate legal remedy to determine parentage
and support obligations, the equitable jurisdiction of the circuit
court may be invoked to provide the child with a forum for his
claims; because such an action is not brought under the Pater-
nity Act, that act's six-year limitation period does not apply;
rather, the action is governed by the general disability tolling
provisions (MCL 600.5851[1]; MSA 27A.5851[1]).

Legal Aid and Defender Association of Detroit
(by *Thomas E. Cardinal),* for plaintiff.

Before: Gribbs, P.J., and MacKenzie and H. R.
Gage,* JJ.

H. R. Gage, J. Plaintiff, Gregory Spada, a minor,
is the child of defendant Janise Pauley. Defendant
Gary Pauley is plaintiff's alleged father. Plaintiff,
by his next friend, appeals as of right from a
circuit court order granting defendant Gary Pau-
ley's motion for accelerated judgment, GCR 1963,
116. The circuit court ruled that plaintiff could not
maintain an action to determine his parentage
separate from that allowed under the Paternity
Act and subject to the six-year limitation period of
the Paternity Act, MCL 722.714(b); MSA 25.494(b).
     Plaintiff was born on February 7, 1970. Defen-
dants were subsequently married in June, 1979,
and separated in September, 1979. Following their
separation, defendant Janise Pauley commenced a

* Circuit judge, sitting on the Court of Appeals by assignment.

paternity action alleging that defendant Gary Pauley was plaintiff's father. In the paternity action, the circuit court granted defendant Gary Pauley's unopposed motion for accelerated judgment based on the six-year limitation period of the Paternity Act. Defendant Gary Pauley then filed a divorce action in circuit court. Janise Pauley answered the complaint for divorce, alleging that Gary Pauley was plaintiff's father. The circuit court refused to consider the issue of plaintiff's paternity, stating that the matter was settled in the previous order. Plaintiff was not a party in either the paternity action or the divorce action.

Plaintiff filed the instant action seeking a determination of his parentage, an order directing the Michigan Department of Health to correct his birth record, and a determination of the duties and obligations of defendant parents, including their duty of support. Following a hearing, the circuit court granted defendant Gary Pauley's motion for accelerated judgment. The court held that, although its former ruling in defendant Janise Pauley's paternity action was not res judicata,[1] plaintiff could not maintain an action to determine his parentage separate from that allowed under the Paternity Act and subject to the six-year limitation period of the Paternity Act, MCL 722.714(b); MSA 25.494(b). *McFetridge v Chiado,* 116 Mich App 528; 323 NW2d 470 (1982), *lv den* 417 Mich 892 (1983).

---

[1] We note our agreement with the circuit court's ruling on the res judicata effect of the court's accelerated judgment in defendant-mother's paternity action. The doctrine of res judicata is inapplicable to actions that are terminated by the granting of accelerated judgment, because an accelerated judgment motion does not test the merits of a claim. *San Joaquin County v Dewey,* 105 Mich App 122, 131; 306 NW2d 418 (1981). The doctrine of res judicata additionally does not apply because plaintiff was not a party in his mother's paternity action. See *In re Kinsella Estate,* 120 Mich App 199, 204; 327 NW2d 437 (1982).

The Paternity Act provides for paternity litigation to be commenced by the mother, the father, or the Department of Social Services. MCL 722.714(a); MSA 25.494(a). The statute does not permit the child to commence an action to determine the child's parentage and the parent's obligation of support. In *McFetridge v Chiado, supra,* p 531, this Court held:

"Absent legislative action, a child may not maintain a paternity action separate from that allowed under the paternity statute and subject to the limitation period. *Cf. JMS v Benson,* 98 Wis 2d 406; 297 NW2d 18 (1980)."

As outlined below, we believe that Michigan's statutory scheme, which denies the present plaintiff a cause of action, unreasonably restricts an illegitimate child's right to obtain parental support. Therefore, an illegitimate child may maintain an independent cause of action to determine parentage and support obligations. Our decision is mandated by the equal protection clause of both the United States Constitution, US Const, Am XIV, and the Michigan Constitution, Const 1963, art 1, § 2. This decision is in accord with the recent judicial and legislative trend to provide illegitimate children with equal protection of the law. Furthermore, recent technological advances avoid what were once difficult proof problems.

I

Both the Uniform Parentage Act[2] and the Uniform Act on Paternity[3] allow a child to bring an action to establish paternity and enforce support obligations. Federal legislation encourages the

[2] 9A Uniform Laws Annotated, Uniform Parentage Act, § 6, p 593.
[3] 9A Uniform Laws Annotated, Uniform Act on Paternity, § 2, p 628.

states to develop effective procedures for support enforcement and establishment of paternity.[4]

At least one judge of this Court has expressed the view that a child should be joined as a party plaintiff in a paternity action. *Wolfe v Geno (On Remand)*, 134 Mich App 433, 435-436; 351 NW2d 316 (1984) (CYNAR, J., dissenting). Moreover, courts in other jurisdictions have recognized a child's nonstatutory cause of action to determine paternity. For example, *JMS v Benson, supra,* relied on by the Court in *McFetridge,* was reconsidered and overturned by the Wisconsin Supreme Court in *WRW v Bartholomew,* 116 Wis 2d 150; 341 NW2d 682 (1984). In *Bartholomew,* the court held that a child had an independent right to bring a declaratory judgment action to establish paternity. Courts in other states have recognized a child's right to bring a declaratory action to establish paternity. See *R v R,* 431 SW2d 152 (Mo, 1968); *Carlson v Bartels,* 143 Neb 680; 10 NW2d 671 (1943).

Other courts have held that a statutory paternity procedure is not exclusive because an illegitimate child has a common-law right to support from his or her parents and equal protection requires that a child be allowed to bring an action on his or her own behalf to establish paternity in order to make a parent's support obligation effective. See *Nettles v Beckley,* 32 Wash App 606; 648 P2d 508 (1982); *Kaur v Chawla,* 11 Wash App 362; 522 P2d 1198 (1974); *Wynn v Wynn,* 587 SW2d 790 (Tex Civ App, 1979); *Carty v Martin,* 233 Kan 7; 660 P2d 540 (1983); *Huss v De Mott,* 215 Kan 450; 524 P2d 743 (1974); *Johnson v Norman,* 66 Ohio St

[4] The Child Support Enforcement Amendments of 1984, 42 USC 666(a)(5), provide that in order to satisfy certain provisions of the Aid to Families with Dependent Children Program under the Social Security Act, each state must have in effect "[p]rocedures which permit the establishment of the paternity of any child at any time prior to such child's eighteenth birthday".

2d 186; 421 NE2d 124 (1981); *Franklin v Julian,* 30 Ohio St 2d 228; 283 NE2d 813 (1972); *Wiczynski v Maher,* 48 Ohio App 2d 224; 356 NE2d 770 (1976).

In Michigan, however, married, natural parents of minors and mothers of illegitimate minors are statutorily obligated to support their minor children, and the duty of support may be enforced by the minor in circuit court. MCL 722.3; MSA 25.244(3).[5] No provision is made, however, for an illegitimate child to enforce the father's duty of support. Moreover, under *McFetridge v Chiado,* a paternity and support determination may be obtained on behalf of an illegitimate minor only through the Paternity Act. The Paternity Act, however, does not give an illegitimate child a full and adequate legal remedy nor does it allow an illegitimate child to file an independent action for support. An illegitimate child may only obtain a paternity and support determination if the mother, the father, or the Department of Social Services brings a paternity action in circuit court within the six-year limitation period.

[5] MCL 722.3; MSA 25.244(3) provides in part:

"(1) The parents are jointly and severally obligated to support a minor unless a court of competent jurisdiction modifies or terminates the obligation; or the minor is emancipated by operation of law except as otherwise ordered by a court of competent jurisdiction.

"(2) The duty of support may be enforced by the minor, his guardian, any relative within the third degree, an authorized government agency or if the minor is being supported in whole or in part by public assistance * * * by the director of the state department of social services, his designated representative or by the director of the county department of social services or his designated representative of the county where an action under this act is brought. An action for enforcement shall be brought in the circuit court for the county where the minor resides and judgment shall be enforcible by the friend of the court in like manner as a child support judgment in a divorce action."

In MCL 722.1(b); MSA 25.244(1), "parents" is defined as follows:

"(b) 'Parents' means natural parents, if married prior or subsequent to the minor's birth; adopting parents, if the minor has been legally adopted; or the mother, if the minor is illegitimate."

## II

Both article 1, § 2 of the Michigan Constitution and the Fourteenth Amendment to the United States Constitution provide that no person shall be denied the equal protection of the law. Classifications based on illegitimacy are invalid under the Fourteenth Amendment if they are not substantially related to permissible state interests. *Pickett v Brown,* 462 US 1; 103 S Ct 2199; 76 L Ed 2d 372 (1983). In *Gomez v Perez,* 409 US 535, 538; 93 S Ct 872; 35 L Ed 2d 56 (1973), the Supreme Court held that it is an unconstitutional denial of equal protection to grant legitimate children a judicially enforceable right to support from their natural fathers and deny that right to illegitimate children:

"[A] State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. We therefore hold that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother. For a State to do so is 'illogical and unjust.' * * * We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination." (Citations omitted.)

In *Mills v Habluetzel,* 456 US 91; 102 S Ct 1549; 71 L Ed 2d 770 (1982), and *Pickett v Brown, supra,* the Supreme Court considered the constitutionality of state statutes which imposed short limitation periods on paternity and child support actions. In both cases, the equal protection analysis focused on whether the limitation period was long enough

to provide illegitimate children with a reasonable opportunity to obtain parental support and whether that opportunity was substantially related to the state's interest in preventing the litigation of stale or fraudulent claims. *Pickett, supra,* 462 US 12; 103 S Ct 2206; *Mills,* 456 US 99-100. The equal protection analysis of *Mills* and *Pickett* is relevant to the present case because in Michigan an illegitimate child's right to obtain parental support is restricted.

## III

MCL 722.1 *et seq.;* MSA 25.244(1) *et seq.* (see n 5, *supra),* does not provide an illegitimate minor with a right to obtain support from the father because MCL 722.1(b); MSA 25.244(1) does not include fathers of illegitimate children within the definition of parents. While normally this Court does not address issues not presented for our review, we are compelled to comment that a legislative scheme which grants legitimate children the right of support from their fathers but does not provide such right to illegitimate children appears to be a clear denial of equal protection under *Gomez v Perez, supra.*

Moreover, the Paternity Act does not provide an illegitimate child a reasonable opportunity to obtain parental support. The interests of the parties to a paternity action are not necessarily identical to the illegitimate child's interests nor are they likely to be sufficiently similar to afford the child a forum to protect his rights under the Paternity Act. A mother may fail to initiate a paternity proceeding for various reasons. She may wish to avoid any contact with the father, she may wish to avoid disapproval of the community or her family, she may be able to support the child and not

foresee a change in her circumstances, she may be subject to emotional strain and confusion that often attends the birth of an illegitimate child, or she may have a continuing relation with or affection for the father. *Pickett v Brown, supra,* 462 US 12-13; 103 S Ct 2206; *Mills v Habluetzel, supra,* 456 US 105-106 (O'Connor, J., concurring); *WRW v Bartholomew, supra,* p 686. Also, the state's interest does not coincide with the illegitimate child's interest. The Department of Social Services is concerned with its own economic interest. A child's interests are much broader.[6]

We cannot see what legitimate interest the state has in denying plaintiff an independent cause of action to determine parentage and support obligations in light of the state's compelling interest in assuring that the primary obligation for support of an illegitimate child falls on the child's parents rather than on the taxpayers of the state. *Mills, supra,* 456 US 103-104 (O'Connor, J., concurring); *Wolfe v Geno, supra,* p 435 (CYNAR, J., dissenting). See also *Kaur v Chawla, supra,* where the court stated:

" 'When minor children are involved, the state's interest is that, in so far as is possible, provision shall be made for their support, education, and training, to the end that they may grow up to be worthy and useful citizens. It, therefore, follows that there should be no discrimination in this respect between children born out of wedlock and children legitimately born. The public interest is exactly the same in either case.' " 11 Wash App 363, n 1; 522 P2d 1198, quoting *Heney v Heney,* 24 Wash 2d 445, 459; 165 P2d 864, 870-871 (1946).

---

[6] At some point, the law must recognize the fact that a child's interests in paternity litigation are much greater than the mother's interest in continued support. "In addition to the right of the child to receive support many other present as well as future rights of the child are involved, depending on the facts and circumstances of a specific case." *Wolfe v Geno, supra,* pp 435-436 (CYNAR, J., dissenting).

It is suggested that the state's interest in preventing stale or fraudulent claims is a legitimate reason for denying illegitimate children a cause of action to determine support. As Justice O'Connor noted in her concurring opinion in *Mills v Habluetzel, supra,* the state's interest in preventing the prosecution of stale or fraudulent claims is "undercut by the countervailing State interest in ensuring that genuine claims for child support are satisfied". 456 US 103 (O'Connor, J., concurring). Moreover, technological developments in blood testing dramatically reduce the possibility that an individual will be fraudulently accused of being the illegitimate child's father. 456 US 104 (O'Connor, J., concurring); *McFetridge v Chiado,* 116 Mich App 532 (R. I. COOPER, J., dissenting).

We also do not believe that it was the Legislature's intent that the Paternity Act provide the exclusive method for determining parentage, since parentage is determined in many other different situations. Parentage is determined, for example, by the Workers' Compensation Appeal Board, see *Bettelon v Metalock Repair Service,* 137 Mich App 448; 358 NW2d 608 (1984), under the Child Custody Act, see *Winsett v Donaldson,* 69 Mich App 36; 244 NW2d 355 (1976), in divorce actions, see *Serafin v Serafin,* 401 Mich 629; 258 NW2d 461 (1977), and under the Revised Probate Code, see MCL 700.111; MSA 27.5111.

We conclude that the failure of Michigan's statutory scheme to provide illegitimate children a reasonable opportunity to file a paternity action is not related to any legitimate state interest. Since the Paternity Act does not afford an illegitimate child a full and adequate legal remedy, the traditional equitable jurisdiction of the circuit court may be invoked to provide plaintiff with a forum for his claims. *Cf. Sovereign v Sovereign,* 354 Mich

65; 92 NW2d 585 (1958). To the extent that *Mc-Fetridge* precludes plaintiff's suit in the present case, we decline to follow it.

Since plaintiff's cause of action in the present case is not under the Paternity Act, the six-year period of limitation, MCL 722.714(b); MSA 25.494(b), does not apply. Rather, the general disability tolling provision of MCL 600.5851(1); MSA 27A.5851(1) is applicable.[7]

Reversed and remanded for further proceedings. Costs to appellant.

Gribbs, P.J., concurred.

MacKenzie, J. *(dissenting)*. I agree with the majority's well-reasoned analysis of Michigan's statutory child support scheme and the conclusion that the scheme is constitutionally infirm as applied to illegitimate children. In my opinion, however, correcting this infirmity is a matter for the Legislature and not for this Court. I therefore respectfully dissent from that portion of the majority opinion creating a common-law cause of action to determine parentage and the parent's obligation of support.

I would affirm.

---

[7] Other jurisdictions have similarly applied a tolling statute for actions outside the paternity act. See *Nettles v Beckley, supra,* 32 Wash App 608; 648 P2d 510, and the cases cited therein.