116 Wis.2d 150 (1984)
341 N.W.2d 682
IN RE the PATERNITY OF R.W.L.: W.R.W., Appellant,
v.
Jack BARTHOLOMEW, Guardian ad Litem for R.W.L., Respondent.
No. 82-1093.
Supreme Court of Wisconsin.
Argued November 30, 1983.
Decided January 4, 1984.
*152 For the appellant there were briefs by James R. Hill, Appleton, and oral argument by Mr. Hill.
For the respondent there was a brief by John S. (Jack) Bartholomew and Bartholomew & Greenhill, Shawano, and oral argument by John S. (Jack) Bartholomew.
Amicus curiae brief was filed by William H. Wilker, assistant attorney general, with whom on the brief was Bronson C. La Follette, attorney general.
SHIRLEY S. ABRAHAMSON, J.
This appeal, on certification by the court of appeals, is from an order of the circuit court for Menominee and Shawano counties, Michael G. Eberlein, Circuit Judge, denying an alleged father's motion to dismiss a paternity action commenced by the guardian ad litem for R.W.L., a minor. The court of appeals certified the appeal to this court "to determine whether an illegitimate child may bring a paternity action under sec. 767.45(1) (a), Stats. [1981-82], when a previous action brought by the district attorney in 1978 under ch. 52, Stats. 1977, was barred because it was not brought within the five-year statute of limitations." We conclude that the child's action is not barred. We affirm the order of the circuit court and remand the matter to the circuit court for further proceedings.
For purposes of the motion to dismiss, the facts are not in dispute. R.W.L. was born on March 20, 1970, to *153 unwed parents. In the spring of 1982, R.W.L. by his guardian ad litem brought an action for a determination of his paternity.
The alleged father moved to dismiss, alleging that the action was barred by sec. 893.195, Stats. 1977, which provided for a five-year limitations period for paternity actions.[1] Sec. 893.195, Stats. 1977, was in effect from the date of R.W.L.'s birth until July 1, 1981, and provided that an action under ch. 52 to establish paternity had to be commenced within five years of the date of the birth of the child. Prior to the commencement of this action the district attorney had commenced an action in 1978 under ch. 52 on behalf of R.W.L.'s mother against the alleged father to establish R.W.L.'s paternity. The Outagamie County circuit court dismissed the 1978 action with prejudice since the action was commenced more than five years after the child's birth.
The statutes in effect from R.W.L.'s birth until July 1, 1981, gave no right to either the mother or child to commence an action to establish the child's paternity. Only the district attorney was empowered to commence a paternity proceeding. If the district attorney declined to prosecute, no one else could. J.M.S. v. Benson, 98 Wis. 2d 406, 297 N.W.2d 18 (1980); State ex rel. Smith v. Chicks, 70 Wis. 2d 833, 235 N.W.2d 694, 239 N.W.2d 9 (1975); secs. 52.21-52.45, Stats. 1977.
*154 Effective July 1, 1981 (chs. 323, 352, 355, and 357, Laws of 1979), the Wisconsin legislature provided that a child may file a paternity action, sec. 767.45(1), Stats. 1981-82,[2] and that such an action must be brought within 19 years of the date of birth of the child. Sec. 893.88 (2), 1981-82.[3] We shall refer to these statutes as the 1981 statute.
*155 The circuit court, after reviewing the pre-1981 and 1981 statutes and the judgment dismissing the 1978 paternity action, denied the alleged father's motion to dismiss, concluding that the 1981 statute established a new cause of action in the child and that the 1978 judgment dismissing the previous paternity action brought by the district attorney did not involve parties present before the court in this case and thus did not bar the instant action.
On appeal the alleged father challenges the circuit court's conclusion that the 1981 statute establishes a new cause of action in the child. The alleged father contends that R.W.L. had a right of action to establish parentage under the pre-1981 statutes and that R.W.L. had not, as required by statute, asserted his right within five years after birth. The alleged father thus urges that R.W.L.'s cause of action was barred under the pre-1981 statutes and could not be revived by a subsequent legislative enactment.
The alleged father's argument is based on J.M.S. v. Benson, 98 Wis. 2d 406, 297 N.W.2d 18 (1980), in which we held that the pre-1981 statutory procedure for commencing a paternity action was exclusive: the district attorney commenced the action (typically upon complaint *156 of the mother) within five years of the birth of the child. Under the Benson rationale the child's cause of action was subsumed into the district attorney's action since representation "by the mother and/or the district attorney" in the paternity action constituted virtual representation of the child. Id. at p. 415.
The alleged father's argument can be summarized as follows: R.W.L. had a cause of action under the pre-1981 statutes to establish parentage, Benson, supra; R.W.L.'s action had to have been brought by the district attorney within five years after R.W.L.'s birth, sec. 893.195, Stats. 1977; no paternity action involving R.W.L. was brought within the statutory five-year period; a paternity action involving R.W.L. brought by a district attorney more than five years after R.W.L.'s birth was dismissed with prejudice; any duty the alleged father may have had to support R.W.L. was terminated in 1975 by operation of the five-year statute of limitations; the running of the five-year statute of limitations barred R.W.L.'s right as well as his remedy; and the 1981 statute cannot constitutionally review R.W.L.'s action which was barred by the five-year statute in force when R.W.L.'s cause of action arose. The alleged father relies on the oft-stated Wisconsin rule that:
"the running of the statute of limitations absolutely extinguishes the cause of action for in Wisconsin limitations are not treated as statutes of repose. The limitation of actions is a right as well as a remedy, extinguishing the right on one side and creating a right on the other, which is as of high dignity as regards judicial remedies as any other right and it is a right which enjoys constitutional protection." Maryland Casualty Co. v. Beleznay, 245 Wis. 390, 393, 14 N.W.2d 177 (1944). See also In re Estate of Fessler, 100 Wis. 2d 437, 448, 302 N.W.2d 414 (1981); sec. 893.05, Stats. 1981-82.
*157 Since the alleged father's argument rests directly on the holding of Benson that the child's right of action was subsumed into the action brought by the district attorney, the outcome of the case depends on the validity of our holding in Benson. In Benson we were not requested to and did not address the constitutionality of the pre-1981 statutes empowering the district attorney to be the child's sole representative to commence a paternity action. In this case, however, the constitutionality of the pre-1981 statutory procedure and of the 1981 statute is before the court.[4] We must therefore reexamine the Benson decision.
Wisconsin has long recognized that children born to married parents and those born to unmarried parents have an opportunity to obtain paternal support. State v. Beilke, 146 Wis. 515, 131 N.W. 891 (1911). The duty of support grows out of the paternal relation. Duffies v. State, 7 Wis. 568 (*672), 569 (*673) (1858). Enforcement of the support obligation of an unwed father is, however, predicated on the establishment of paternity.
Historically paternity was established by quasi-criminal proceedings which were viewed as a means of reducing the public burden of supporting illegitimate children who were or might become public charges. Paternity statutes reflected society's belief that a father should be legally responsible for the support of his *158 children. Duffies v. State, 7 Wis. 568 (*672), 569 (*673) (1853). In more recent years society has come to recognize that the primary interest in the paternity action is that of the child. Francken v. State, 190 Wis. 424, 436, 209 N.W. 766 (1926). Implicit in the Wisconsin statutes relating to paternity and financial support for children (whether born in or out of wedlock) is a recognition of the child's judicially enforceable right vis-a-vis the father to establish parentage and to obtain financial support. J.M.S. v. Benton, 98 Wis. 2d 406, 414, 415, 297 N.W.2d 18 (1980). As a matter of federal constitutional law children born out of wedlock have a "judicially enforceable right ... to needed support from their natural fathers when the state has posited this right for children born in wedlock." Gomez v. Perez, 409 U.S. 535, 538 (1973).
The question then becomes whether the pre-1981 statutes provided a forum for the child born out of wedlock to assert and litigate these rights. Article I, section 9, of the Wisconsin Constitution, a provision of great importance in our jurisprudence, guarantees a remedy for a legislatively recognized right.[5]Mulder v. Acme-Cleveland Corp., 95 Wis. 2d 173, 189, 290 N.W.2d 276 (1980). The Wisconsin Constitution "does not entitle Wisconsin litigants to the exact remedy they desire, but merely to their day in court.... Under sec. 9, art. I, the legislature may impose reasonable limitations upon the remedies available to parties." Metzger v. Department of Taxation, 35 Wis. 2d 119, 129, 150 N.W.2d 431 (1967).
*159 According to Benson, the pre-1981 statutes vested a right in the child to establish parentage and support but vested exclusive authority in the district attorney to commence a paternity action in which the child's rights were determined. Whether the pre-1981 statutes accorded a child born out of wedlock his or her "day in court" under article I, section 9, for asserting parentage and support rights depends on well-recognized principles of law, e.g., was the child given notice of the proceedings, an opportunity to present evidence, and the right to have an attorney present his or her case.
Under the pre-1981 statutes the child was not given notice of the paternity proceeding and there was no requirement that the child be present personally, by a guardian, or by a guardian ad litem. Thus whether the child was accorded a remedy or forum depends on whether there was a relationship between the child and the parties present at the paternity action such that the parties present should be recognized as representing the child. Cf. Hansberry v. Lee, 311 U.S. 32, 44-45 (1940); sec. 879.23(5), Stats. 1981-82.
In pre-1981 paternity proceedings the mother and district attorney were present, and we must determine whether their interests are substantially identical to the interests of the child born out of wedlock to justify our statement in Benson that there was "virtual representation" of the child's interest through the representation of "the mother and/or district attorney."
The pre-1981 Wisconsin law, as we stated previously, provided that only the district attorney had the power to commence a paternity action. The mother could initiate proceedings, but the commencement of the paternity action was within the discretion of the district attorney. Under the pre-1981 statutes the district attorney had significant control over the proceedings. Secs 52.22-52.29, 52.45, 55.05(1)(2), Stats. 1977.
*160 The district attorney's role in the pre-1981 paternity action was the result of a legislative balancing of the interests of the various parties to a disputed paternity proceeding: the child, the child's mother, the alleged father, and the state. The district attorney in exercising his or her discretion in commencing a paternity action took into consideration these several interests.
In determining whether to commence the paternity action the district attorney considered the child's interests. Paternity proceedings were designed to enable the child to establish parentage and to protect the child's financial well-being.
In determining whether to commence the paternity action, the district attorney also considered the mother's interests. The district attorney could also represent the mother at the proceedings. See sec. 52.22, Stats. 1977. The mother was frequently the complainant who initiated the proceedings. The mother's interests in a paternity proceeding coincide to a large extent with those of both the state and the child. Like the state, the mother has an interest in seeing that the child does not become a public charge. Like the child, the mother has an interest in obtaining the father's assistance in providing for the child's support, maintenance, and education, and establishing a legal father-child relationship in order to entitle the child to any benefits that could be derived from such a relationship.
The mother's interests may also diverge from those of the state or the child. A mother may have a variety of reasons for not initiating paternity proceedings: she may have a continuing relation with or affection for the father; she may wish to avoid continuing any relation with the father, including child support; she may wish to avoid the disapproval of her family or the community that she believes a paternity action would produce; she *161 may be subject to the emotional strain and confusion that often attend the birth of a child born out of wedlock and continue for a prolonged period, hindering any effort by her to seek child support; she may be able to support the child and not foresee a change in her circumstances.
In addition to considering the child's and the mother's interests in determining whether to commence the paternity action, the district attorney considered the alleged father's interests in securing an accurate and fair determination of paternity. Cf. Little v. Streater, 452 U.S. 1 (1981). Traditionally a paternity action has been viewed as an action particularly subject to fraud. By vesting prosecutorial discretion in the district attorney, the pre-1981 statutes sought to provide a screening process to protect a man who might be wrongfully accused of fathering a child. Although we are mindful that the alleged father should be protected against fraudulent or stale claims, we note that the ever-increasing effectiveness of testing to establish paternity significantly reduces the chance of fraud or error.
Finally, in determining whether to commence the paternity action, the district attorney considered the interests of the state. The state's primary interest is to protect the public from the burden of supporting children born out of wedlock where fathers are financially able to contribute to their maintenance. Slawek v. State, 62 Wis. 2d 295, 305, 215 N.W.2d 9 (1974). The state also has a more general interest in preventing the litigation of stale and fraudulent claims.
Thus under the pre-1981 statutes, the district attorney considered the interests of the child, the mother, the alleged father, and the state in determining whether to commence the paternity action. It is apparent from this analysis of the pre-1981 statutes that the district attorney did not have substantially the same interests as the
*162 child and could not be considered the child's representative in a paternity action. Whether the mother may have substantially the same interests as the child to be considered the child's representative in a paternity action is not before us because under the pre-1981 statutes the mother could not commence the action.[6]
[7,8] On reflection it is clear that we erred in holding in Benson, supra, 98 Wis. 2d at 415, that the legislature provided in the pre-1981 statutes "for the virtual representation of [the child in the] paternity determination through the mother and/or the district attorney." It follows that we also erred in holding in Benson that the pre-1981 statutory procedure is the child's exclusive remedy for establishing paternity and constitutes a bar to the child's obtaining a judicial forum in his or her own right on the paternity issue. Such an interpretation renders the pre-1981 statutory procedure unconstitutional under article I, section 9, because it did not afford the child a "day in court" to litigate a legislatively recognized right. We therefore overrule Benson and hold that the pre-1981 statutes did not provide an exclusive remedy or forum for a child to establish paternity. Accordingly we conclude that prior to the 1981 statute, R.W.L. had a right to bring a declaratory judgment action to establish paternity independent from the ch. 52 procedure commenced by the district attorney.
*163 Having recognized that R.W.L. had a right prior to the 1981 statute to bring a paternity action in his own behalf (separate and independent from the district attorney's proceedings), we now consider whether R.W.L.'s cause of action was barred by a statute of limitations before commencement of this action. The alleged father argues that even if prior to the 1981 statute R.W.L. had a separate cause of action, his cause of action was barred before commencement of this action by sec. 893.195, Stats. 1977, the five-year statute of limitations applicable to paternity actions. We do not find this argument persuasive. Sec. 893.195, 1977, was expressly limited to actions brought under ch. 52, and the child's pre-1981 cause of action was not under ch. 52. Before the adoption of the 1981 statute there apparently was no statute of limitations applicable to the child's commencement of a paternity action. If there were an applicable statute, sec. 893.33, 1977, the disability tolling provision, would have suspended its operation.
For the reasons set forth, we conclude that as of the commencement of this action, R.W.L. had a cause of action to establish parentage and for paternal support which was not barred by any statute of limitations. Accordingly we hold that this action was brought timely and should not be dismissed.
A collateral issue has been raised in the briefs and at oral argument. In 1982 when this action was commenced the 1981 statute governed the procedure to be followed by a child in commencing a paternity action.[7] The alleged *164 father urges that this action is invalid because the real party commencing the action is the state, not the child as required by the 1981 statute, and the guardian ad litem is representing the state and the district attorney's office, not the child. He challenges the propriety of the district attorney's office petitioning for the appointment of a guardian ad litem for R.W.L., then 12 years of age. He also asserts that the statutory procedure for the appointment of a guardian ad litem was not followed. Finally he challenges the validity of amending these proceedings originally brought by the state to an action brought in R.W.L.'s name.[8] Although there may be a question whether these issues may properly be raised by *165 the alleged father to defeat the paternity action, once these matters are called to the court's attention, they cannot be ignored.
The record before us consists only of pleadings, requests to appoint guardians ad litem and counsels' arguments on the motion to dismiss. There is no evidentiary material in the record concerning the relationship of the guardian ad litem to the district attorney or to the child. On this record we cannot determine the validity of the alleged father's assertions. Because these may be important issues relating to a child's rights, they should be addressed by the circuit court on remand.
For the reasons set forth, we affirm the order of the circuit court and remand for proceedings not inconsistent with this opinion.
By the Court.Order affirmed.
NOTES
[1] Sec. 893.195, Stats. 1977, provides:

"893.195 Within 5 years. Within 5 years of the date of birth of a child or if the parents live together as man and wife after the birth of the child, 5 years after they separate: An action under ch. 52 for the establishment of the paternity of the child, except that this limitation shall not apply where the parties thereto enter into an agreement for the support of the child in accordance with s. 52.28 or where a 2nd proceeding is had pursuant to s. 52.31(2). Where a warrant or summons under ch. 52 has been issued within such 5 years, ss. 893.30 and 939.74(3) shall both be applicable in computing time under this section."
[2] Sec. 767.45(1) (6), Stats. 1981-82, provides:

"767.45 Determination of paternity. (1) The following persons may bring an action for the purpose of determining the paternity of a child or for the purpose of rebutting the presumption of paternity under s. 891.41:
"(a) The child.
"(b) The child's natural mother.
"(c) A man presumed to be the child's father under s. 891.39.
"(d) A man alleged or alleging himself to be the father of the child.
"(e) The personal representative of a person specified under pars. (a) to (d) if that person has died.
"(f) The legal or physical custodian of the child.
"(g) This state whenever assignment is made under s. 49.19
(4)(h)1 or 49.45(19), including the delegates of the state as specified in sub. (6).
"(6)(a) The county board shall designate either the district attorney or the corporation counsel to provide the representation authorized under par. (b) in cases brought under this section.
"(b) The attorney designated under par. (a) or any state attorney may represent any petitioner who commences an action under this section with that person's consent. The county attorney authorized under par. (a) is the only county attorney who may provide this representation with the consent of the petitioner and is the only county attorney who may provide representation when the state delegates its authority under sub. (1)(g).
"(c) The county attorney or state attorney may not represent a party in an action under this section and at the same time act as guardian ad litem for the child or the alleged child of the party."
[3] Sec. 893.88(2), Stats. 1981-82, provides:

"(2) An action for the establishment of the paternity of a child by the child shall be commenced within 19 years of the date of the birth of the child or be barred." The 1981 statutes also provide that an action, other than one by the child, for the establishment of the paternity of a child shall be commenced within six years of the child's date of birth, or if the parents live together as husband and wife, within six years after they separate. Sec. 893.88(1), Stats. 1981-82, provides:
"Paternity actions. (1) An action for the establishment of the patenity of a child shall be commenced within 6 years of the date of birth of the child or, if the parents live together as husband and wife after the birth of the child, within 6 years after they separate, or be barred. This limitation does not apply to an action by the child or if the parties enter into an agreement for the support of the child."
[4] The attorney general was notified of the commencement of this action. The attorney general did not participate in the action until it moved the court of appeals for leave to file a brief in this case; the court of appeals granted the motion. The state's brief urges this court to affirm the circuit court's order. Implicit in the state's brief is the concern that application of the 1978 statute to bar R.W.L.'s action would be unconstitutional.
[5] Article I, section 9, of the Wisconsin Constitution provides:

"Remedy for wrongs. SECTION 9. Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."
[6] The legislature might have viewed the mother's interests sufficiently similar to the child's to have concluded that the mother would effectively represent the best interests of the child in a paternity action. The mother's knowledge is probably the most relevant and accurate and the child is probably in her custody. We need not decide, and do not decide, whether a statute enabling the mother, in addition to the state, to commence a paternity action on behalf of the child affords the child remedy under article I, section 9, of the Wisconsin Constitution. Under the pre-1981 statutes the mother was the complainant; the district attorney had the sole right to commence the paternity action.
[7] By its terms the 1981 statute provides that it applies to all proceedings commenced after July 1, 1981. Sec. 40, ch. 352, Laws of 1979, provides as follows:

"Applicability. This act applies to all paternity proceedings commenced after the effective date of this act. This act applies to all paternity proceedings commenced but not reduced to judgment or concluded prior to the effective date of this act. However, this act does not apply to paternity judgments or to any motion concerning paternity judgments or any paternity proceeding otherwise completed prior to the effective date of this act, except for motions to modify child support."
[8] On February 22, 1982, on petition of the district attorney, the circuit court appointed an assistant district attorney as guardian ad litem for R.W.L. The district attorney's petition for the appointment of the guardian ad litem stated that because of the statute of limitations, the child was the only party capable of initiating an action to determine paternity. On March 17, 1982, the district attorney commenced an action to determine R.W.L.'s paternity; the petitioner was not R.W.L. but the state of Wisconsin which was represented by the district attorney. On May 6, 1982, the district attorney requested the circuit court to substitute Attorney Jack Bartholomew as guardian ad litem for R.W.L. in the paternity action. The district attorney's petition again asserted that because of the statute of limitations, the child was the only party capable of initiating an action to determine paternity. On May 21, 1982, the petition commencing the paternity action was amended to substitute R.W.L. by his guardian ad litem as petitioner in place of the state.

Upon objection to this procedure by the alleged father the circuit court concluded that perhaps it would have been better had the first action been dismissed without prejudice and the action started again. But the circuit court denied the alleged father's motion to dismiss the action as improperly commenced, holding that the error was a mere technicality and that the action could have been started again without difficulty. We do not consider this issue because, as the court of appeals correctly noted, it is not dispositive of the dispute between the parties.