182 Wis.2d 166 (1994)
513 N.W.2d 410
IN RE the PATERNITY OF JAMES A. O. and Janet C. O.: JAMES A. O. and Janet C. O., Petitioners-Appellants,[]
v.
GEORGE C. B., Respondent-Respondent.
No. 93-1216-FT.
Court of Appeals of Wisconsin.
Submitted on briefs November 24, 1993.
Decided February 1, 1994.
*170 For the petitioners-appellants the cause was submitted on the briefs of Nancy Phelps of Blumenthal, Jacquart, Blumenthal, Leib & Phelps, S.C., of Milwaukee.
For the respondent-respondent the cause was submitted on the briefs of David P. Geraghty of Coffey, Coffey & Geraghty, of Milwaukee.
Before Wedemeyer, P.J., Sullivan and Schudson, JJ.
SCHUDSON, J.
Janet C. O., and her son, James A. O., appeal the trial court order dismissing their petition for adjudication of the paternity of James. The trial court dismissed the action based on its conclusion that, under § 893.88, STATS., the petition for adjudication of paternity was time-barred because James was over nineteen years of age. We agree with this conclusion and, therefore, on the primary issue presented in this appeal, we affirm. We disagree, however, with the trial court's determination that the petition was frivolous *171 and, therefore, we reverse the trial court order awarding costs and attorney fees.

I.
Janet and James filed a paternity action on April 30, 1992, against George C. B., alleging that George was James' father. In the petition, they alleged that in 1970, Janet and George entered into an oral agreement concerning the paternity of James, under which Janet was to receive $5,000 in lieu of commencing a paternity action. She allegedly agreed to this to help George prevent their relationship from being revealed to his employer and to his wife. Further, Janet alleged that George never denied that he was the father of James. Neither Janet nor James ever petitioned for an adjudication of paternity prior to this action.[1] When the action was filed, James was twenty-five years old.
The central issue of this appeal is whether James, an adult "child" over the age of nineteen, is barred from bringing an action to adjudicate his paternity. The trial court concluded that the action was precluded by § 893.88, STATS., that provides:
[A]n action for the establishment of the paternity of a child shall be commenced within 19 years of the date of the birth of the child or be barred.
*172 James argues that § 893.88, STATS., violates Article I, sec. 9 of the Wisconsin Constitution, which states:
Remedy for wrongs. SECTION 9. Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws.
He argues that § 893.88 "imposes an unreasonable limitation on the certain remedy available to parties seeking establishment of parentage, in violation of the Wisconsin Constitution." James maintains that because Wisconsin law recognizes the right of a child to establish parentage, he must have the corresponding opportunity, unfettered by a limitations period, to bring such an action.
No Wisconsin decision has addressed the precise issue James presents in this case: whether, under Article I, sec. 9, Wisconsin's nineteen year limitation period is unconstitutional to the extent that it denies an adult "child" the opportunity to gain the remedy of paternity adjudication for nonsupport-type injuries.[2] James does *173 not challenge the constitutionality of the limitations period as it applies to a person seeking to establish parentage as a prerequisite for obtaining financial child support. Rather, James attacks § 893.88, STATS., only to the extent that it eliminates the right to establish parenthood as a "remedy" for "injuries" such as denial of minority status for obtaining business and education loans,[3] denial of inheritance rights, denial of access to medical or other pertinent records, and denial of social security benefits.
James emphasizes that Wisconsin's paternity laws have evolved and broadened to include increasing numbers of parties and interests that may be served by paternity actions pursued over an increasing period of years.[4] He points out that Wisconsin law recognizes a *174 "child's judicially enforceable right vis-a-vis the father to establish parentage." In Re R.W.L., 116 Wis. 2d 150, 158, 341 N.W.2d 682, 685 (1984). He emphasizes that, in R.W.L., the supreme court observed that a child's interests in establishing parentage were not always the same as those of the state or parent. In addition to their common interest in financial support, the child also might have distinct reasons to establish parentage. Indeed, R.W.L. acknowledged "an interest in ... establishing a legal father-child relationship in order to entitle the child to any benefits that could be derived from such a relationship." Id. at 160, 341 N.W.2d at 686 (emphasis added).
George responds that the United States Supreme Court's decisions in Mills v. Habluetzel, 456 U.S. 91 (1982), Pickett v. Brown, 462 U.S. 1 (1983), and Clark v. Jeter, 486 U.S. 456 (1988), "recognize the age of majority as a limitation on paternity actions that sufficiently protects the state's interest in avoiding the litigation of stale or fraudulent claims as well as providing a period of time sufficiently long in duration to protect the interests of the child." He maintains, therefore, that if the age of majority limitation is constitutional, a nineteen-year limitation also must be.
George's argument overstates the holdings of these decisions. Resolving each case on equal protection grounds, the Court concluded that statutes of limitations of three states were unconstitutional: one year, in Texas (Mills); two years, in Tennessee (Picket); and six years, in Pennsylvania (Clark). Although the Court, in Clark, referred to "the federal Child Support Enforcement Amendments of 1984 that requires all States participating in the federal child support program to have procedures to establish paternity of any child who is less than 18 years old," it did not comment *175 on the constitutionality of an age of majority statute of limitation. Clark, 486 U.S. at 459.
Moreover, these Supreme Court decisions all focused specifically on statutes of limitations that restricted the period within which one could petition on behalf of a child to establish paternity for the purpose of child support. See Mills, 456 U.S. at 92; Pickett, 462 U.S. at 3; Clark, 486 U.S. at 457. Analyzing only the financial support interest that ordinarily would be limited to the years of childhood, and doing so only in equal protection terms, the Court did not address the other interests and the "right/remedy" theory that, James argues, support his effort to determine paternity.
[1-4]
Article I, sec. 9 originated out of concerns that citizens not be forced to bribe public officials to get into court. Hartland-Richmond Town Ins. v. Wudtke, 145 Wis. 2d 682, 691, 429 N.W.2d 496, 499 (Ct. App. 1988), overruled on other grounds, Funk v. Wollin Silo & Equip., Inc., 148 Wis.2d 59, 435 N.W.2d 244 (1989). Accordingly, this article provides persons the right of access to the courts to obtain justice based on the law as it exists. Id. (emphasis added). It does not confer any legal rights. Id. (emphasis added). Moreover, as James acknowledges, under Article I, sec. 9, the legislature has the right to impose reasonable limitations upon the remedies available to the parties. R.W.L., 116 Wis. 2d at 158, 341 N.W.2d at 685.
James argues nonetheless that § 893.88, STATS., imposes an unreasonable limitation on the remedy of establishing parentage. Particularly, James suggests that certain "injuries" such as the denial of a minoritybased loan or the right to inherit might occur after he turns nineteen. Thus he argues that § 893.88 violates Article I, sec. 9, by unreasonably limiting his right to *176 seek a remedy because the "injuries" he might want to redress would not occur until after the limitations period has passed.
[5-8]
We review the constitutionality of a statute de novo. Zintek v. Perchik, 163 Wis. 2d 439, 478, 471 N.W.2d 522, 538 (Ct. App. 1991). Statutes carry a heavy presumption of constitutionality, and the party challenging a statute has the burden of proving its unconstitutionality beyond a reasonable doubt. Chappy v. LIRC, 136 Wis. 2d 172, 184-185, 401 N.W.2d 568, 573-74 (1987). Every presumption will be indulged to sustain the law if at all possible. State ex rel. Hammermill Paper Co. v. La Plante, 58 Wis. 2d 32, 46, 205 N.W.2d 784, 792 (1973).
Although Wisconsin's appellate courts have never addressed the precise issue in this case, in recent years they have considered similar issues stemming from Article I, sec. 9 challenges to other statutes of limitations. In CLL Associates v. Arrowhead Pacific Corp., 174 Wis. 2d 604, 497 N.W.2d 115 (1993), the Wisconsin Supreme Court addressed the issue of when a contract cause of action accrues under § 893.43, STATS.[5] Declining to apply the tort "discovery rule," the supreme court held that under § 893.43, a contract cause of action accrues the moment the breach occurs, regardless of whether the injured party knew or should have known of the breach. Id. at 607, 497 N.W.2d at 116. The supreme court concluded that such a construction of *177 the limitations period did not violate the plaintiff's constitutional rights under Article I, sec. 9, stating, "Article I, sec. 9, of the Wisconsin Constitution [is not violated] solely because the limitations period expired before CLL discovered its injury." Id. at 614, 497 N.W.2d at 119. The supreme court also drew from its decision in Rod v. Farrell, 96 Wis. 2d 349, 291 N.W.2d 568 (1980), overruled on other grounds by Hansen v. A.H. Robbins, Inc., 113 Wis. 2d 550, 335 N.W.2d 578 (1983):
This Court has said that although Art. I, sec. 9, Wisconsin Constitution, guarantees a suitor a day in a court of competent jurisdiction to which he may present his claim, the statute of limitations may bar a plaintiff's action and the defending party may rely on the statutory bar.
CLL, 174 Wis. 2d at 615, 497 N.W.2d at 119 (citations omitted).
This court reached a similar conclusion in Hartland-Richmond, where plaintiff argued that § 893.89, STATS., violated Article I, sec. 9 by barring its cause of action for defective workmanship before the alleged defect was even discovered.[6] 145 Wis. 2d at 690, 429 *178 N.W.2d 499. This court rejected plaintiff's argument, stating that Article I, sec. 9:
guarantees a remedy stemming from injuries that result from an "invasion or infringement of a legal right or a failure to discharge a legal duty...." Hartland-Richmond's "right" here is defined and limited by the applicable limitations period.
....
... Therefore, the only legislatively-recognized "right" Hartland-Richmond had against Wudtke or his insurer was to bring an action within six years after the substantial completion of the building. Once this period expired, Hartland-Richmond's "right" was extinguished. Section 893.89 does not run afoul of art. I, sec. 9, because six years after substantial competition, Hartland-Richmond no longer had a legally-recognized right for which it was being denied a remedy. Unless there is a statutory foundation for suit, art. I, sec. 9 does not confer on plaintiffs the right to bring a cause of action.
Hartland-Richmond, 145 Wis. 2d at 691, 693, 429 N.W.2d at 499-500 (citations omitted). Accord Halverson v. Tydrich, 156 Wis. 2d 202, 216-217, 456 N.W.2d 852, 858 (Ct. App. 1990) (citing Hartland-Richmond, in which the court of appeals upheld limitations periods for medical malpractice action under §§ 893.55 and 893.56, STATS., from attack under Article I, sec. 9, stating "limitations period does not violate Wis. Const. art I, sec. 9, solely because it runs before the discovery of the injury.").
[9]
These decisions are consistent with long-established authority that, in effect, clarifies the right *179 George has under § 893.88, STATS. The protection afforded George by this statute of limitation is not merely one of repose. The termination of James' right to commence a paternity action corresponds to the creation of George's right to be free from James' claim under the statute.
In Wisconsin the running of the statute of limitations absolutely extinguishes the cause of action for in Wisconsin limitations are not treated as statutes of repose. The limitation of actions is a right as well as a remedy, extinguishing the right on one side and creating a right on the other, which is as of high dignity as regards judicial remedies as any other right and it is a right which enjoys constitutional protection.
Maryland Casualty Co. v. Beleznay, 245 Wis. 390, 393, 14 N.W.2d 177, 179 (1944). When "expiration of the limitations period extinguishes the cause of action of the potential plaintiff[,] ... it also creates a right enjoyed by the would-be defendant to insist on that statutory bar." In Re the Estate of Fessler, 100 Wis.2d 437, 448, 302 N.W.2d 414, 420 (1981).
[10]
Further, not only does the expiration of the time period extinguish the cause of action but also, under the statute, "[t]he passage of time itself destroys the right and remedy of the injured party." Id. Thus, when James failed to commence his action for the establishment of paternity under § 893.88, STATS., within nineteen years of his birth, the rights and remedies he claims no longer existed, under the statute.[7] He offers *180 nothing that, in this case, could lead this court to "limit the authority of the legislature to extinguish a claim by virtue of the operation of a limitations statute." Id. at 451, 302 N.W.2d at 421.
Applying these principles, this court concludes that James has not met his burden of proving beyond a reasonable doubt that § 893.88, STATS., is unconstitutional under Article I, sec. 9. Section 893.88 is not invalid simply because it cuts off James' right to recover for injuries, unrelated to support issues, that may only occur after his nineteenth birthday. James is no more disadvantaged, as a matter of law, than the plaintiffs in CLL or Hartland-Richmond. Indeed, if anything, James may have been in a better position. After all, while those parties had no idea that they had suffered injury, James has always known that his legal paternity had not been adjudicated.[8] He has always known, or could easily have known, that he had potential injuries that could have been prevented by a paternity action, even if he could not have defined the exact nature or time of the injury. If Article I, sec. 9 is not offended by the limitations periods discussed in CLL and Hartland-Richmond, it certainly is not offended by the limitation period set forth in § 893.88, STATS.
[11]
Thus, while James is correct in pointing out that § 893.88, STATS., draws no distinction between financial support and other interests that may be served by establishing parentage, we note also that the statute *181 places no restriction on the purposes for which a child might pursue a paternity action. Although typically a child's paternity action would be filed to gain financial support, that need not be a purpose, or the exclusive purpose, in any action. Further, once a child gains the adjudication for what may have been the initial purpose of child support, he or she also realizes the additional potential interests that James has described. Therefore, while the statute forecloses a longer time limit for purposes unrelated to child support, it also allows paternity actions for unlimited purposes during those nineteen years.
Moreover, we note that the record in this case includes nothing that would carry James' concerns outside the purely speculative realm. Although he points to potential education and business loans, as well as inheritance and health concerns, he offers nothing to establish that those interests are or can be unalterably undermined by the limitation he challenges.[9] In the first place, as noted, he had nineteen years to protect those interests through a formal adjudication of paternity. In the second place, the fact that he has failed to do so does not preclude his opportunity to prove paternity in judicial or other forums that may *182 have to consider such interests.[10] The fact that a § 893.88, STATS., adjudication no longer is available to James does not mean that, for his pursuit of other interests, he would be foreclosed from proving paternity to the satisfaction of future fact-finders.[11]
[12]
We acknowledge that, as James maintains, a longer time period would allow a better opportunity to evaluate whether to bring a paternity action and that, given the important interests that may not be readily apparent to a child or young adult, additional time would be fair. Indeed, under some circumstances, the needs of an adult "child" to determine parentage may be so substantial, and the need of a parent to avoid that *183 determination so insubstantial, that no time limitation should apply. That, however, remains an issue for legislative consideration.
[13]
Section 893.88, STATS., protects the right to adjudicate paternity for all the purposes James describes for one year beyond the age of majority. Although James offers a compelling theory for legislative consideration, he has not satisfied his burden to establish that such a one-year period of adulthood, in addition to the eighteen years of childhood, is constitutionally infirm under Article I, sec. 9.

II.
Janet and James also appeal the trial court order awarding George $852.00 in costs and attorney fees under § 814.025(3)(b), STATS., as a sanction for bringing a frivolous action. We agree with appellants that, in this respect, the trial court erred.
Section 814.025, STATS., provides in relevant part:
(1) If an action ... is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees.
....
(3) In order to find an action ... to be frivolous under sub. (1), the court must find one or more of the following:
....
(b) The party or the party's attorney knew, or should have known, that the action ... was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.
*184 [14-16]
Whether a reasonable party or attorney knew or should have known that an action was without reasonable basis in law or equity is a mixed question of law and fact. Stoll v. Adriansen, 122 Wis. 2d 503, 513, 362 N.W.2d 182, 187 (Ct. App. 1984). What a reasonable party or attorney knew or should have known is a question of fact, id., and we will not overturn the trial court's determination unless it was clearly erroneous, § 805.17(2), STATS. Whether knowledge of the relevant facts would lead a reasonable party or attorney to conclude that a petition is frivolous, however, is a question of law. Stoll, 122 Wis. 2d at 513, 362 N.W.2d at 188. We "resolve[] doubts in favor of the litigant or attorney." In re the Estate of Bilsie, 100 Wis. 2d 342, 350, 302 N.W.2d 508, 514 (Ct. App. 1981).
[17,18]
In this case, the trial court made no findings, apart from its assessment that "this action was without any reasonable basis in law or equity and could not have been supported by a good faith argument for an extension, modification or reversal of existing law," to support its conclusion that the petition was frivolous. Our review of the central issue in this case, however, certainly establishes that Janet and James made a substantial "argument for an extension, modification or reversal of existing law." See § 814.025(3)(b), STATS. The fact that they did not prevail does not render their action frivolous. See Stoll, 122 Wis. 2d at 515, 362 N.W.2d at 188-189. Although George argued to the trial court that their petition was motivated by extralegal personal and political considerations, the trial court made no findings in that regard.[12] Nothing in *185 this record establishes any lack of good faith by Janet and James in pursuing their petition to establish paternity based on a novel, but substantial legal theory.
Accordingly, the order dismissing appellants' petition for paternity is affirmed, and the order for payment of costs and attorney fees is reversed and vacated.
By the Court.Order affirmed in part; reversed in part.
NOTES
[] Petition to review denied.
[1] Although James and Janet both brought the action and this appeal, they, as well as George, litigated the issue before the trial court and briefed the issue on appeal with a focus on James' rights, not Janet's. Nowhere has Janet argued that she, independent of James, has any right to an adjudication of James' paternity after he has turned nineteen. Accordingly, in the balance of this decision, we also will address the issue in terms of James' rights, not Janet's.
[2] We note the somewhat vague nature of James' constitutional argument. Counsel for James argued to the trial court that "under the unequal [sic] protection provisions, we feel that since somebody who's adopted has the right to determine who their natural parents are from age 21 years and over that ... he should have the same rights." On appeal, however, James has only argued that the statute "is an unconstitutional limitation on the child's right to a certain remedy." Only in the conclusion to his brief does James refer to "the Equal Protection clauses of the Federal and Wisconsin Constitutions." Accordingly, we confine our analysis to James' "right/remedy" constitutional argument under Article I, Section 9. See Dumas v. State, 90 Wis. 2d 518, 523, 280 N.W.2d 310, 313 (Ct. App. 1979) (constitutional points merely raised but not argued will not be reviewed).

We note, also, that by our October 8, 1993, order, this court allowed the Attorney General the opportunity to file a brief "that addresses the constitutionality of sec. 893.88, Stats." The Attorney General declined to do so.
[3] James told the trial court that his father is black and his mother is white.
[4] As the supreme court has explained:

The statutes in effect ... until July 1, 1981, gave no right to either the mother or child to commence an action to establish the child's paternity. Only the district attorney was empowered to commence a paternity proceeding. If the district attorney declined to prosecute, no one else could.
Effective July 1, 1981, the Wisconsin legislature provided that a child may file a paternity action ....
In Re R.W.L., 116 Wis. 2d 150, 153, 341 N.W.2d 682, 683-684 (1984) (citations omitted). Also, as the court noted, the legislature extended the period of limitations from five years to six years in 1980, and to nineteen years in 1981. In Re D.L.T., 137 Wis. 2d 57, 58-59, 403 N.W.2d 434, 435 (1987).
[5] Section 893.43, STATS., provides:

Action on contract. An action upon any contract, obligation or liability, express or implied, including an action to recover fees for professional services, except those mentioned in s. 893.40, shall be commenced within 6 years after the cause of action accrues or be barred.
[6] Section 893.89, STATS., provides:

Action for injury resulting from improvements to real property. No action to recover damages for any injury to property, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against the person performing or furnishing the design, land surveying, planning, supervision of construction, materials or construction of such improvement to real property, more than 6 years after the substantial completion of construction. If the injury or defect occurs or is discovered more than 5 years but less than 6 years after the substantial completion of construction, the time for bringing the action shall be extended 6 months.
[7] This principle was codified in § 893.05, STATS.:

Relation of statute of limitations to right and remedy. When the period within which an action may be commenced on a Wisconsin cause of action has expired, the right is extinguished as well as the remedy.
[8] In argument to the trial court, counsel stated, "He's always known who he thinks his father is, but legally nothing was pursued."
[9] In responding to the trial court's inquiry about why James had waited years to commence the action, counsel for James stated:

When Jimmy last year  year before when he decided he wanted to continue his education, and he found out that he would be eligible for school loans because of his minority status, he found out that he couldn't do that because he did not have an adjudicated father on his  didn't have a father on his birth certificate or an adjudication of paternity, so he decided that he wanted to do this for his own emotional reasons and health reasons.
On appeal, however, James offers nothing on this specific subject.
[10] Some laws and regulations may provide specific alternative methods of proof. This is so, for example, even in the area of intestate inheritance. Section 852.05, STATS., provides in part:

(1) A nonmarital child or the child's issue is entitled to take in the same manner as a marital child by intestate succession from and through his or her mother, and from and through his or her father if the father has either been adjudicated to be the father in a paternity proceeding under ch. 767, or has admitted in open court that he is the father, or has acknowledged himself to be the father in writing signed by him.
[11] Further, we note our qualification of § 893.05, STATS. Referring to the supreme court's decision in City of Milwaukee v. Firemen Relief Ass'n, 34 Wis.2d 350, 149 N.W.2d 589 (1967), we explained:

Thus, while sec. 893.05, Stats., speaks of extinguishment of a right and remedy, it is only actions in law that are extinguished. An action in equity is not so barred. The Firemen Relief case tacitly recognizes this fact by admitting that despite the statute of limitations having run on the statutory action, an action in equity might remain, subject to laches.
Elkhorn Area School Dist. v. East Troy Community School Dist., 127 Wis. 2d 25, 30-31, 377 N.W.2d 627, 630 (Ct. App. 1985).
[12] The trial court and counsel for George had the following colloquy: [The Court]: An action or claim has been made that the action was also frivolous under 814.025(3)(a) where it is alleged that the action was commenced in bad faith solely for the purpose of harassing or maliciously injuring another, I can't make any finding on that section without a hearing, and I don't know if the defendant wants to proceed on that section.

[Counsel]: At this point, we will not, Your Honor.